IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL M. ZUBRITZKY, | ) |
|            Plaintiff, | ) C.A. No: 2:10-cv- |
| vs. | ) |
| WILLIAM F. PROVENZANO, | ) |
|            Defendant. | ) |

## COMPLAINT

### PARTIES AND NON-PARTIES

1. Plaintiff, Paul M. Zubritzky (hereinafter referred to as "ZUBRITZKY") is an adult individual and resident of the Commonwealth of Pennsylvania, County of Allegheny, and City of Pittsburgh, who at all times material to the acts complained of herein was a board certified obstetrician who served on the medical staff of Ohio Valley General Hospital from 1981 until his resignation in 2009. During this period, ZUBRITZKY also served in many positions connected to Ohio Valley General Hospital, including, but not limited to President of the Ohio Valley General Hospital Medical Staff, Chair of the Obstetrical and Gynecological Department at Ohio Valley General Hospital, President of the Pittsburgh OB/GYN Society, and has been requested to and did chair many committees for the hospital. ZUBRITZKY practices medicine independently, and although never an employee of Ohio Valley General Hospital, during all periods relevant to the allegations herein caused patients to be admitted to Ohio Valley General Hospital to be treated therein by himself and others.

2. Defendant William F. Provenzano (hereinafter referred to as "PROVENZANO") is an adult individual who, at all times material to the acts

complained of herein was employed by Ohio Valley General Hospital as its Chief Executive Officer.

3. Although not a party to this action, Ohio Valley General Hospital (hereinafter referred to as "OVH" or "Enterprise") is a non-profit corporation established in accordance with the laws of the Commonwealth of Pennsylvania, having its offices at 25 Heckel Road, Kennedy Township, Allegheny County, McKees Rocks, Pennsylvania.

## JURISDICTION AND VENUE

4. Plaintiff's claim as set forth in the First Count of this Complaint arises under the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §1962. This Honorable Court's jurisdiction over this claim is founded on 18 U.S.C. §1964(c) and 28 U.S.C. §1331. This Honorable Court's jurisdiction over Plaintiff's related state-law claims is pursuant to 28 U.S.C. §1367.

5. All of the acts complained of in the within Complaint took place in Allegheny County, Pennsylvania, and venue is properly laid in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b).

## COUNT ONE
### (Racketeering)

6. The allegations numbered one through five are re-alleged and incorporated herein.

**A.** **The Enterprise**

7. OVH constitutes an "enterprise" as defined by Title 18, United States Code, Section 1961(4). The Enterprise is a full service non-profit 116 bed community hospital that provides healthcare services to residents of Pennsylvania and adjoining states. The Enterprise is engaged in, and its activities affect, interstate commerce.

8. As Chief Executive Officer of the Enterprise, PROVENZANO participated in the operation and management of OVH.

9. Defendant PROVENZANO was engaged in, among other things, violating the Hobbs Act, 18 U.S.C. §1951, Wire Fraud, 18 U.S.C. §1343, and Mail Fraud, 18 U.S.C. §1341.

10. Beginning on or about May 27, 2009, and continuing until the present time, within the Western District of Pennsylvania and elsewhere, Defendant PROVENZANO, being a person employed by and associated with OVH, an enterprise engaged in, and the activities of which affect, interstate commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of OVH through a pattern of racketeering activity, that is, through the commission of the acts more fully described below.

**B.    The Pattern of Racketeering Activity**

11. The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(a) and (5) consisted of the following acts:

**Racketeering Act One:**
**(Violation of the Hobbs Act, 18 U.S.C. §1951)**

12. In or around 2003 through 2009, in the Western District of Pennsylvania, the Defendant PROVENZANO did unlawfully and knowingly devise and intend to devise a scheme and artifice to defraud Plaintiff ZUBRITZKY.

13. PROVENZANO's scheme and artifice to defraud ZUBRITZKY was intended to obtain the property of ZUBRITZKY through the inducement of fear, by the fear of economic loss, and by denying ZUBRITZKY the right and ability to make business decisions free from improper outside pressure.

3

14. Beginning in 2003, PROVENZANO caused and induced OVH to expend in excess of $30 Million to create and construct a new facility at OVH that included specialized areas for obstetrical care. The new surgery and maternity center at OVH was opened in 2007.

15. PROVENZANO caused and induced OVH to enter into employment agreements whereby certain physicians were employed as direct employees of OVH to staff and conduct business to benefit OVH and PROVENZANO. Under the employment agreement(s) OVH was to create a new affiliated business through which the employee-physicians would bring patients to OVH.

16. PROVENZANO caused and induced OVH to establish an entity known as "Robinson OB/GYN," so that employee-physicians Zenaida Rosado, M.D., and others would bring patients to OVH, and OVH would thereby profit.

17. Beginning in May, 2009, Defendant PROVENZANO began to promote Robinson OB/GYN, and its OVH employee-physicians Vladimir Nikifarouk, M.D. and Jennifer Stull, D.O. by publicizing Robinson OB/GYN and its employee-doctors' ability to perform single incision laparoscopic hysterectomies. The publicity effort included paid radio advertisements, articles in newspapers, healthcare related magazines and placing paid advertisements in publications. This publicity effort was intended to generate business and profits for OVH, and to substantiate the wisdom of PROVENZANO's decisions to build the new $30 Million facility and hire the two current OVH physician-employees.

18. The financial success of Robinson OB/GYN and OVH directly benefited PROVENZANO.

19. On or after May 27, 2009, Defendant PROVENZANO learned of a specific patient JANE DOE[1] who was admitted into OVH's emergency room ("ER").

20. At the time of her admission into OVH ER, Doe had been a patient of OVH physician-employee Dr. Vladimir Nikifarouk.

21. DOE was a married 34 year old pregnant female who had been diagnosed with intrauterine embryonic demise by Dr. Nikifarouk prior to her admission into the OVH ER.

21. DOE related to the OVH ER staff that she had been told by Dr. Nikifarouk that she should spontaneously abort, or miscarry, the fetus either at home, or, if necessary, she could go to the OVH ER for assistance.

22. While in the OVH ER, DOE asked to be cared for by another physician.

23. Plaintiff ZUBRITZKY was, at that time, the on-call obstetrician for OVH, and was called for assistance at approximately 5:00 a.m. on May 27, 2009 by an OVH ER physician who informed Dr. ZUBRITZKY that DOE was having emergency medical problems requiring specialist care, that Dr. Nikifarouk had been contacted several times by the hospital and had refused to come in and attend to DOE's immediate needs, and that DOE was requesting care from Dr. ZUBRITZKY and not from Dr. Nikifarouk.

24. As the on-call obstetrician for OVH, ZUBRITZKY was obligated to respond to calls and treat patients when summoned.

24. Plaintiff ZUBRITZKY arrived at the OVH ER shortly thereafter and cared for DOE. During the treatment, ZUBRITZKY confirmed that DOE wanted

---

[1] The patient is identified herein by pseudonym to protect the patient's privacy rights pursuant to, *inter alia,* 29 U.S.C. §1129, et seq. ("HIPAA").

ZUBRITZKY to care for her and wanted to end her patient relationship with Dr. Nikifarouk and/or Robinson OB/GYN.

25. On May 28, 2009, Defendant PROVENZANO, through the use of the United States mail, and/or via facsimile transmission, caused to be distributed a letter to Gene M. Battistella, D.O., President of the OVH Medical Staff, in which PROVENZANO requested that the OVH Medical Staff Executive Committee investigate the patient care *provided by Dr. ZUBRITZKY* to Jane DOE on May 27, 2009. In addition, Defendant PROVENZANO, without any factual basis or probable cause to do so, requested that the allegation that Dr. ZUBRITZKY threatened Dr. Nikifarouk also be investigated.

26. PROVENZANO had no reasonable basis to conclude that Dr. ZUBRITZKY had threatened Dr. Nikifarouk, but nonetheless falsely stated such in order to advance, further and carry out his scheme and artifice to defraud Dr. ZUBRITZKY.

27. On or about June 10, 2009, PROVENZANO attended a meeting where he blamed ZUBRITZKY for financial losses at OVH and announced his decision to discontinue OVH's obstetrical and gynecological department. Others at the meeting pointed out that OVH spent $30 million only two years prior to open the unit, and that a formal evaluation should be conducted before making a decision to close the department.

28. PROVENZANO's decision to close the obstetrical and gynecological department at OVH was motivated by his personal animus toward Dr. ZUBRITZKY.

29. Thereafter, during June, 2009, PROVENZANO contacted representatives of Corazon, Inc., to conduct an evaluation that would provide allegedly independent justification for PROVENZANO's decision.

30. On or about July 7, 2009, PROVENZANO announced that OVH had commissioned Corazon to conduct a study of the financial viability of the continued operation of OVH's obstetrical and gynecological department.

31. On or about July 10, 2009, the Ad Hoc committee PROVENZANO had requested to investigate Dr. ZUBRITZKY released its findings. The committee concluded that Dr. ZUBRITZKY's actions were appropriate and that it had no evidence to conclude that Dr. ZUBRITZKY had threatened Dr. Nikifarouk.

32. PROVENZANO, however, had already indicated his dissatisfaction with the Ad Hoc committee's findings, in spite of the fact that the Committee's findings had been accepted by the Medical Staff Executive Committee, and on or about June 30, 2009, stated that he will pursue the issue further and asked that Dr. ZUBRITZKY's chairmanship of the OVH Ob/Gyn department be delayed and investigated.

33. On June 30, 2009, Dr. ZUBRITZKY, learning of PROVENZANO's intent to create problems with his chairmanship of the OVH Ob/Gyn department, tendered his written resignation as department chairman.

34. On or about August 11, 2009, Dr. ZUBRITZKY learned that Dr. Nikifarouk had been suspended from the hospital staff for a repeated pattern of sexual harassment.

35. On or about August 20, 2009, the pre-ordained results of the Corazon study recommending the closure of the OVH Ob/Gyn department were announced.

36. On or about August 24, 2009, Dr. Nikifarouk resigned from the OVH medical staff.

37. During October, 2009, PROVENZANO caused to be published and distributed to OVH employees a hospital newsletter which made derogatory references to a physician in a manner understood to refer to Dr. ZUBRITZKY.

38. On or about October 12, 2009, PROVENZANO announced that OVH would close its Obstetrical and Gynecological department.

39. On or about October 16, 2009, however, PROVENZANO solicited advice from another physician regarding how to start a new gynecology department at OVH.

40. On November 6, 2009, at approximately 1:31 p.m., PROVENZANO caused an e-mail to be sent to numerous physicians and hospital employees stating: **"Please note that Dr. Zubritzky has been suspended from the Medical Staff at OVGH and is not permitted in the building. If you see Dr. Zubritzky in the hospital, you are immediately to call the police."**

41. On Friday, November 6, 2009, PROVENZANO telephoned Dr. Patrick Christy, President of the OVH Medical Staff, to inform him that PROVENZANO had suspended Dr. ZUBRITZKY's hospital privileges and alleged that Dr. ZUBRITZKY had threatened his life. PROVENZANO also informed Dr. Christy that if Dr. ZUBRITZKY went to the hospital he would be arrested.

42. Also on November 6, 2009, PROVENZANO caused a letter to be sent through the United States mail, and/or through facsimile transmission, to Dr. ZUBRITZKY informing him that PROVENZANO had suspended him from the Medical Staff at OVH (the "Suspension Letter").

43. In the Suspension Letter, PROVENZANO stated : "This action has been taken in concordance with the Medical Staff President and Chairman of the Credentials Committee."

8

44. PROVENZANO's statement in the Suspension Letter about the action being taken "in concordance with the Medical Staff President and Chairman of the Credentials Committee" was made knowing that it was false.

45. PROVENZANO sent the Suspension Letter with the intent that Dr. ZUBRITZKY would rely upon the statements made therein.

46. Dr. ZUBRITZKY's reliance upon the statements made by PROVENZANO in the Suspension Letter was reasonable.

47. As a result of the suspension wrongfully imposed by PROVENZANO in the Suspension Letter, Dr. ZUBRITZKY was unable to see certain patients in the weeks intervening thereafter; was forced to telephone patients to explain that other arrangements for their care would need to be made; patients were inconvenienced and forced to make transportation arrangements to other medical facilities; other patients were unable to schedule the delivery of their babies at OVH as expected and were forced, on short notice, to make arrangements at other hospitals.

48. PROVENZANO sent the Suspension Letter in furtherance of his scheme and artifice to defraud Dr. ZUBRITZKY and to cause economic duress and emotional distress to Dr. ZUBRITZKY.

49. On November 7, 2009, PROVENZANO contacted the Kennedy Township Police Department and reported that Dr. ZUBRITZKY had threatened his life.

50. PROVENZANO's statements made to the Kennedy Township Police were made knowing they were false, without any basis in fact, with intent to implicate Dr. ZUBRITZKY in criminal activity, and in furtherance of PROVENZANO's scheme and artifice to defraud Dr. ZUBRITZKY.

51. On or about November 9, 2009, PROVENZANO caused to be sent through the United States mail, and/or by facsimile transmission, a letter to Dr. ZUBRITZKY informing him that he was not permitted on *any property* owned by the hospital, regardless of whether owned or leased, and including satellite locations.

52. Pursuant to the Medical Staff bylaws at OVH, PROVENZANO did not have the authority to unilaterally suspend Dr. ZUBRITZKY from the medical staff.

53. Pursuant to the Medical Staff bylaws at OVH, any suspension, including the "precautionary" suspension allegedly imposed by PROVENZANO requires the concurrence of the President of the Medical Staff, the Chairperson of the Credentials Committee, and the appropriate Department Chairperson.

54. On November 6, 2009, the president of the Medical Staff at OVH was Dr. Patrick T. Christy.

55. On November 6, 2009, the chairman of the Credentials Committee at OVH was Dr. Jalit Tuchinda.

56. On November 6, 2009, the chairman of the Department of Surgery was Phillip Georgevich.

57. On November 11, 2009, Doctors Christy, Tuchinda and Georgevich informed PROVENZANO in writing that there was no "concurrence" regarding any alleged suspension of Dr. ZUBRITZKY, and that the precautionary suspension was not in effect.

58. As a result of the acts of PROVENZANO, Dr. ZUBRITZKY was unable to see and treat existing and new patients during a portion of November, 2009.

59. As a result of the acts of PROVENZANO, Dr. ZUBRITZKY suffered financial losses, shame, humiliation, embarrassment, and emotional distress.

60. On November 12, 2009, Dr. ZUBRITZKY gave notice of his resignation from the medical staff at OVH.

### Racketeering Act Two
### (Violation of 18 U.S.C. §1341 - Mail Fraud)

61. PROVENZANO's act on or about May 28, 2009 of using of the United States mail, and/or via facsimile transmission, to cause to be distributed the letter to Gene M. Battistella, D.O., President of the OVH Medical Staff, in which PROVENZANO requested that the OVH Medical Staff Executive Committee investigate the patient care *provided by Dr. ZUBRITZKY* to Jane DOE and the allegation that Dr. ZUBRITZKY threatened Dr. Nikifarouk utilized the United States mail and was done knowingly and with an intent to advance, further and carry out PROVENZANO's scheme to defraud Dr. ZUBRITZKY.

### Racketeering Act Three
### (Violation of 18 U.S.C. §1343 – Wire Fraud)

62. PROVENZANO's act on or about May 28, 2009 of causing to be transmitted the letter to Gene M. Battestella, M.D., President of the OVH Medical Staff, in which PROVENZANO requested that the OVH Medical Staff Executive Committee investigate the patient care *provided by Dr. ZUBRITZKY* to Jane DOE and the allegation that Dr. ZUBRITZKY threatened Dr. Nikifarouk by wire was done knowingly and with an intent to advance, further and carry out PROVENZANO's scheme to defraud Dr. ZUBRITZKY.

### Racketeering Act Four
### (Violation of 18 U.S.C. §1341 – Mail Fraud)

63. PROVENZANO's act, on November 6, 2009, of causing a letter to be sent through the United States mail, and/or through facsimile transmission, falsely informing

Dr. ZUBRITZKY of his suspension from the Medical Staff at OVH was done knowingly and to advance, further and carry out PROVENZANO's scheme and artifice to defraud Dr. ZUBRITZKY using the United States Mail.

### Racketeering Act Five
### (Violation of 18 U.S.C. §1343 – Wire Fraud)

64.    PROVENZANO's act, on November 6, 2009, of causing a letter to be sent by facsimile transmission, falsely informing Dr. ZUBRITZKY of his suspension from the Medical Staff at OVH was done knowingly and to advance, further and carry out PROVENZANO's scheme or artifice to defraud Dr. ZUBRITZKY using the United States Mail.

65.    All of the aforementioned acts of Racketeering caused Dr. ZUBRITZKY to suffer loss to business or property.

### COUNT TWO
### (Supplemental State Law Claim for Intentional Interference with Contractual Relations)

66.    The allegations in Paragraphs One through Sixty Five are incorporated herein by reference.

67.    For all periods relevant to the acts complained on herein, Dr. ZUBRITZKY had a contractual relationship with OVH.

68.    PROVENZANO was aware of the contractual nature of Dr. ZUBRITZKY's relationship with OVH.

69.    The aforesaid acts of PROVENZANO were done with the intent to interfere with Dr. ZUBRITZKY's protected contractual relationship with OVH.

70.    As a result of PROVENZANO's acts complained of herein, Dr. ZUBRITZKY suffered financial losses due to not treating patients at OVH.

## COUNT THREE
### (Supplemental State Law Claim for Intentional Interference with Contractual Relations)

71. The allegations in paragraphs One through Seventy are incorporated herein by reference.

72. For all periods relevant to the acts complained on herein, Dr. ZUBRITZKY had a contractual relationship with F.O.R. Sto-Rox (hereinafter "F.O.R."), a neighborhood family health center.

73. PROVENZANO was aware of the contractual nature of Dr. ZUBRITZKY's relationship with F.O.R.

74. On or about October 10, 2009, PROVENZANO contacted the executive director of F.O.R. and attempted to divert patients from Dr. ZUBRITZKY to other physicians affiliated with or employed by OVH.

75. As a result of PROVENZANO's communications with F.O.R., Dr. ZUBRITZKY's relationship was impaired.

## COUNT FOUR
### (Supplemental State Law Claim for Defamation)

76. The allegations in paragraphs One through Seventy Five are incorporated by reference herein.

77. As a board certified obstetrician practicing medicine at OVH for 29 years, Dr. ZUBRITZKY enjoyed a reputation as a highly competent and respected physician.

78. PROVENZANO intentionally and wrongfully imposed the suspension of Dr. ZUBRITZKY's staff privileges at OVH on or about November 6, 2009.

79. PROVENZANO intentionally and wrongfully caused to be distributed and published an e-mail to numerous physicians and others at OVH regarding the need to

summon the police if Dr. ZUBRITZKY was seen at OVH (hereinafter the "November 6 e-mail").

80. The November 6 e-mail caused other physicians, hospital staff, and others in the community to hold Dr. ZUBRITZKY in lower regard and otherwise damaged his fine and unblemished reputation as a physician at OVH and in the community.

## COUNT FIVE
### (Supplemental State Law Claim for Negligence)

81. The allegations in paragraphs One through Eighty are incorporated herein be reference.

82. As CEO of OVH, PROVENZANO owed a duty to Dr. ZUBRITZKY and others with whom OVH had contractual relationships to exercise his authority fairly and in good faith.

83. By the acts complained of herein, PROVENZANO breached his duty toward Dr. ZUBRITZKY.

84. As a direct and proximate cause of PROVENZANO's breach, Dr. ZUBRITZKY suffered losses and damages.

## COUNT SIX
### (Supplemental State Law Claim for Intentional Infliction of Emotional Distress)

85. The allegations in Paragraphs One through Eighty Four are incorporated herein by reference.

86. PROVENZANO undertook the acts complained of herein intentionally, and with the intent to cause emotional distress to Dr. ZUBRITZKY.

87. As a result of the acts complained of herein, Dr. ZUBRITZKY suffered emotional distress.

## COUNT SEVEN
### (Supplemental State Law Claim for Negligent Infliction of Emotional Distress)

88. The allegations in Paragraphs One through Eighty Seven are incorporated herein by reference.

89. PROVENZANO took the acts complained of herein with reckless disregard that the likely effect would be to cause emotional distress to Dr. ZUBRITZKY.

90. As a result of the acts complained of herein, Dr. ZUBRITZKY did suffer emotional distress.

## COUNT EIGHT
### (Supplemental State Law Claim for Fraud)

91. The allegations in Paragraphs One through Ninety are incorporated herein by reference.

92. As a result of the fraudulent and knowingly false statements made by PROVENZANO, Dr. ZUBRITZKY suffered damages and losses.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Paul M. Zubritzky demands the following relief:

a.) an award of damages;

b.) treble damages pursuant to 18 U.S.C. §1964(c);

c.) an award of attorney's fees pursuant to 18 U.S.C. §1964(c); and

d.) such other and further relief as the Court may find just and proper.

## VI.   JURY TRIAL DEMAND

Plaintiff demands a trial by jury of the claims in this Complaint.

Respectfully Submitted,

*/s/ David J. Barton*
David J. Barton, Esquire
Pa. I.D. 81271

*/s/ Jeffrey K. Sassic*
Jeffrey K. Sassic
Pa. I.D. 202327

BENTZ LAW FIRM, P.C.
The Washington Center Building
680 Washington Road, Suite 200
Pittsburgh, PA 15228
(412)563-4500