IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

PAUL M. ZUBRITZKY,           )
                             )
          Plaintiff,         )
                             )
     v.                      )     Civil No. 10-342
                             )
WILLIAM F. PROVENZANO,       )
                             )
          Defendant          )

MEMORANDUM AND OPINION

Mitchell, J.

Presently before the Court is Defendant's, William F. Provenzano ("Provenzano"), Motion to Dismiss Plaintiff's, Paul M. Zubritzky ("Zubritzky"), Amended Complaint (Docket No. 17) for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and because the allegations in Counts IV, V and VIII of the amended complaint fail to meet the pleading requirements of Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9. For the reasons that follow, Provenzano's Motion to Dismiss (Docket No. 18) will be granted with prejudice with respect to the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO") claim.

   I.   Factual and Procedural History

Zubritzky is an obstetrician and a former member of the medical staff of Ohio Valley General Hospital ("OVGH").

1

During the timeframe relevant to the allegations of this action, Provenzano was the Chief Executive Officer of OVGH.

On or about May 27, 2009, Jane Doe, an obstetrical patient, entered OVGH requiring emergent medical care. Although the woman was a patient of another OVGH staff physician, Dr. Vladmir Nikifarouk, as the on-call physician, Zubritzky treated Doe.

The next day, Provenzano sent a letter to the President of the OVGH Medical Staff requesting an investigation of both the patient care provided to Doe by Zubritzky and of an alleged threat against Dr. Nikifarouk made by Zubritzky.

On or about June 10, 2009, Provenzano attended a meeting wherein he blamed Zubritzky for financial losses at OVGH and announced his decision to close the ob/gyn department. He then engaged Corazon, Inc. to evaluate the continued financial viability of the ob/gyn department. When the study concluded, it was recommended that the department be closed.

In the meantime, on July 10, 2010, the committee formed to investigate Zubritzky released its findings concluding that Zubritzky's actions were appropriate and that it had no evidence that Zubritzky threated Dr. Nikifarouk. Nevertheless, Provenzano continued to pursue the issue and requested that Zubritzky's chairmanship of the OVGH ob/gyn department be investigated or delayed. Zubritzky resigned as department

chairman.

In October, 2009, Provenzano published and distributed a newsletter to OVGH employees which referred to an unnamed physician in a derogatory manner. Zubritzky understood the negative statement in the newsletter as a reference to him.

On November 6, 2009 Provenzano sent an email to a number of physicians and OVGH employees informing them that Zubritzky had been suspended from the medical staff and that the police should be notified if he was seen on the premises. Provenzano then contacted the head of the medical staff and informed him that he had suspended Zubritzky because Zubritzky had threatened his life. On that same day, Provenzano sent Zubritzky a letter informing him that his medical privileges had been suspended "in concordance with the Medical Staff President and Chairman of the Credentials Committee." Am. Compl. ¶ 43. Provenzano also reported Zubritzky's threat to the Kennedy Township Police Department.

On November 11, 2009, the Chairmen of the Medical Staff and Credentials Committee sent Provenzano a letter indicating that Zubritzky's suspension was ineffective because it was issued without the appropriate concurrences. The following day, Zubritzky voluntarily resigned from the OVGH medical staff.

On March 15, 2010, Zubritzky filed a complaint against

3

Provenzano alleging violations of RICO (Count I) and Pennsylvania state law claims of intentional interference with contractual relations, defamation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and fraud. (Counts II – VIII). Provenzano filed a motion to dismiss which this Court granted without prejudice (Docket No. 15). Zubritzky was granted the opportunity to amend the complaint to include facts to establish either the closed-ended or open-ended continuity necessary to a viable RICO claim.

On August 20, 2010, Zubritzky filed an amended complaint alleging additional predicate acts committed by Provenzano in the context of a False Claims Act action instituted on January 19, 2006 by the United States against OVGH in the Western District of Pennsylvania. According to the False Claims Act complaint, OVGH submitted false statements in cost reports it submitted seeking payment from the Medicare program. Most of the allegations concerned the hospital's reimbursement for a substance called Procuren, even though Medicare declared that those costs were not eligible for repayment. OVGH apparently circumvented Medicare's policy by falsely describing Procuren in the cost reports submitted to the agency. Although aware that Procuren was not a reimbursable expense, Provenzano was a signatory to those reports.

4

The United States sought to recover over $200,000 in federal funds paid to OVGH as a result of its submission of the allegedly deceptive hospital costs. OVGH filed a motion for summary judgment arguing that the conduct complained of in the False Claims Act complaint was within the scope of a release entered in connection with litigation in the Middle District of Florida.

On February 11, 2008, the District Court here determined that it could not definitively rule on the force and effect of the release without a determination on the issue from the Florida Court. The Court, therefore, dismissed the complaint without prejudice, subject to OVGH obtaining a ruling from the Florida Court as to the impact of the release. Although the Florida Court denied OVGH's motion for a judicial determination concerning the scope of the release, the United States did not pursue prosecution of the Western District False Claims Act matter and the case was dismissed with prejudice.

On September 3, 2010, Provenzano filed a motion to dismiss the amended complaint arguing, *inter alia*, that Zubritzky has failed to remedy the deficiencies of its prior complaint.

II. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly*,* 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal*,* 129 S.Ct. 1937 (2009), have

5

shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim.[1] First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

III. Discussion

Zubritzky's amended complaint alleges two additional predicate acts against Provenzano premised on the False Claims Act action filed by the United States against OVGH. Zubritzky asserts that these supplementary predicate acts enlarge the time frame beyond the nine months involved with Provenzano's alleged

---

[1] It is unnecessary to discuss dismissal of the complaint under Fed. R. Civ. P. 8(a) or Fed. R. Civ P. 9(b).

illegal activity in attempting to defraud the plaintiff and also establish that Provenzano's regular course of business involved fraudulent activity and commission of predicate acts designed to increase profits at OVGH, thereby increasing his own compensation.

In order to "prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, **and** that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co.*,* 492 U.S. 229, 239 (1989) (emphasis in original). Congress defined predicate acts as related when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240 (quoting 18 U.S.C. § 3575(e))[2]; Tabas v. Tabas, 47 F.3d 1280, 1292 (3d Cir. 1995). This relationship requirement "exists to ensure that RICO is not used to penalize a series of disconnected criminal acts." United States v. Eufrasio*,* 935 F.2d 553, 565 (3d Cir. 1991).

The continuity requirement "is both a closed and open-

---

[2] The Supreme Court determined that "relationship" for purposes of RICO is defined in the same way as it was in the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575, et seq. (now partially repealed). H.J., Inc., 429 U.S. at 240; Swistock v. Jones, 884 F.2d 755, 757 (3d Cir. 1989).

7

ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., Inc., 492 at 241 (citation omitted). When a closed-ended scheme is alleged, the United States Court of Appeals for the Third Circuit "has developed a durational requirement of at least twelve months." Richardson v. Richardson, Civil Action No. 07-4510, 2008 WL 2812977, at * 5 (E.D.Pa. July 21, 2008)(citing Tabas, 47 F.3d at 1293). The threat of continuity required for an open-ended scheme can be demonstrated by evidence that "predicate acts are part of defendant's regular way of doing business." Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 609-610 (3d Cir.1991) (quoting H.J. Inc., 492 U.S. at 242). Or, in other words, that the defendant "operates a long-term association that exists for criminal purposes." Id. (internal quotation omitted).

Zubritzky's amended complaint fails to establish either closed-ended or open-ended continuity because the alleged predicate acts do not meet the threshold relationship requirement as defined by H.J., Inc.

With respect to the wire and mail fraud claims related to the False Claims Act action filed against OVGH, the alleged purpose was to enhance the financial success of OVGH and,

correspondingly, Provenzano's compensation. In contrast, the alleged goal of Provenzano's scheme to defraud Zubritzky was "to obtain the property of Zubritzky through the inducement of fear, by the fear of economic loss, and by denying Zubritzky the right and ability to make business decisions free from improper outside pressure." Am. Compl. ¶ 13. The amended complaint then describes how Provenzano induced OVGH to establish an ob/gyn practice which would assumedly funnel its patients to OVGH. The inference to be drawn is that if Provenzano succeeded in detrimentally impacting Zubritzky's medical practice, then his patients would become patients of the hospital-established ob/gyn group, garnering a financial benefit to the hospital.

The parallels between the purposes of these schemes are negligible. While their objectives could be broadly viewed as attempts to enrich Provenzano, the connection is too attenuated to suggest a pattern of criminal activity, as opposed to unrelated, isolated instances. This conclusion is bolstered by the reason that the relatedness of the other H.J., Inc. factors is even more remote in this situation. As for the results of the schemes, the complaint alleges that the expected outcome of the fraudulent acts surrounding the false hospital cost reports was the enrichment of OVGH and Provenzano. The complaint, however, does not contend that Provenzano exacted any

9

monetary gain from his alleged misdeeds concerning Zubritzky.

Similarly, the participants and victims embroiled in the scheme are dissimilar. While Provenzano played a role in both activities, the False Claims Act complaint was filed against OVGH, not Provenzano. Zubritzky had absolutely no connection to the False Claims Act action.

Finally, there is no similarity in the method of commission of the predicate acts. While both involved illegal use of the mail and wires, the fraudulent activity in the False Claims Act action concerned deceitful cost reports submitted to a government agency. The Zubritzky-related mail and wire fraud doings consisted of Provenzano's direct communications with OVGH staff designed to embarrass Zubritzky and further Provenzano's scheme to defraud him.

Considering the palpable dissimilarity between the two schemes, the Court concludes that Zubritzky's amended complaint has not alleged facts sufficient to establish the required relatedness of the predicate acts, and thereby fails to outline a pattern of racketeering activity entitling him to relief under the RICO statute.

III. Conclusion

For the reasons stated, Provenzano's motion to dismiss the amended complaint (Docket No. 18) with respect to the RICO

claim will be granted with prejudice.

Furthermore, the jurisdictional basis for counts two through eight of the amended complaint is the court's right to exercise supplemental jurisdiction over claims that are a part of the same case or controversy. 28 U.S.C. § 1367(a). It is within the court's discretion to decline to exercise its supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §1367 (c). Having dismissed the count one RICO claim, the only count within this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over Zubritzky's state law claims and those claims are dismissed without prejudice.

Dated: December 6, 2010                s/Robert C. Mitchell
                                       Robert C. Mitchell
                                       U.S. Magistrate Judge